SCOTT (WRIGHT v.). See Case No. 18,092.

## Case No. 12,549.

### SCOTT v. The YOUNG AMERICA.

[Newb. 101.] [2]

District Court, D. Michigan. 1856.

COURTS — FEDERAL JURISDICTION — ADMIRALTY — NAVIGABLE WATERS—CANALS.

1. The district courts of the United States derive their jurisdiction from the constitution of the United States and the acts of congress made in pursuance thereof.

2. The second section of the third article of the constitution of the United States, which declares that the judicial power of the courts of the United States "shall extend to all cases of admiralty and maritime jurisdiction," embraces those subjects, whether of contract or tort, which, at the time the constitution was adopted, under the general maritime law, were the appropriate subjects of the jurisdiction of admiralty courts.

3. The act of congress of the 26th of February. 1845 [5 Stat. 726]. did not enlarge the jurisdiction of the national courts as to questions of admiralty.

4. The term "navigable waters." used in the act of congress of 26th February. 1845, is not to be understood in the same sense as "natural streams;" and must be held to include an artificial communication such as the Welland canal.

[Cited in The Avon, Case No. 680.]

The libel in this case was filed by [Dwight Scott] the owner of the schooner Constitution to recover damages resulting to the schooner from a collision with the propeller, in the month of August, 1855, while the schooner was lying windbound in the Welland canal.

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by John S. Newberry, Esq.]

The usual allegations of carelessness and negligence on the part of the libeled vessel were contained in the libel. At the time of the collision the schooner was bound with a cargo of coal, upon a voyage from Erie, a port on the south shore of Lake Erie, in the state of Pennsylvania, to Toronto, a port on the north shore of Lake Ontario, in the province of Upper Canada. The Welland canal is the only navigable water communication between Lakes Erie and Ontario. No appearance having been made on behalf of the propeller, her default was entered and the libel taken as confessed. A motion was subsequently made, in behalf of the American Transportation Company, owner and claimant of the propeller, to set aside the default and order pro confesso, and for leave to file an answer. This motion was urged on the sole ground that the court had no jurisdiction of the cause, inasmuch as the collision alleged did not occur either "upon the lakes, or the navigable waters connecting the lakes." To sustain this position it was contended that the Welland canal, being an artificial communication, was not "navigable water," within the meaning of the act of 1845.

Jacob M. Howard, in support of the motion.

The tort complained of was not committed on the lakes, nor on any of the waters naturally connecting them. To apply the jurisdiction given by the act of 1845 to every case arising upon waters which may form an artificial communication between the lakes, would be to give the admiralty jurisdiction of any contract or tort that might arise upon a canal connecting Lake Michigan with Lake Huron, Lake Erie or Lake Superior; or connecting Lake Huron or Lake Erie with Lake Ontario, through Canada, no matter in what circuitous route that connection might be made. It could not have been the intention of congress to confer such a strange and anomalous jurisdiction upon the district courts. It will, of course, be conceded that the court could not take cognizance of a case arising upon a stream from the interior of Michigan into Lake Erie, nor of one arising upon a stream flowing from the interior into Lake Michigan, for the reason that neither stream would be water connecting two lakes. But the construction claimed by the libelant in this case would give the court jurisdiction upon both streams the moment an artificial channel capable of navigation should connect those streams at their fountains in the interior. It is submitted that the powers of the court cannot depend upon any such uncertain and contingent circumstances, and that the "navigable waters connecting the lakes," contemplated by the act of 1845, must be such waters as are made navigable by nature; otherwise almost any canal connecting the navigable waters, would furnish ground of jurisdiction. No statute of the United States has ever applied the term "navigable

waters," to an artificial channel or canal, but only to natural streams capable of being navigated. See Ben. Adm. § 236, and statutes there referred to. At the common law rivers were held to be navigable only up to the head of tide-water. 1 E. C. L. 240; 5 Pick. 199; Ang. Water Courses, § 545. It is submitted that the words "navigable waters connecting," etc., mean natural, and not artificial channels, and that as the tort complained of by the libelant is alleged to have occurred on the Welland canal, it is not cognizable by this court. The navigable waters connecting the lakes are well known—they are the rivers St. Marie, St. Clair, Detroit and Niagara—all well known channels of navigation, as well known as the Straits of Gibraltar, the Bosphorus and the Dardanelles. These "navigable waters" must be taken to limit the extent of the jurisdiction of the admiralty in the same manner as it is limited by the phrases "high seas," or "tide water," in cases arising in the ocean. In such cases the jurisdiction is determined by the place where the cause of action arises; and if it arise within the body of the county the admiralty has no power to redress the wrong. Conk. Adm. 22, 23, &c.

H. K. Clark, contra.

The jurisdiction of this court, in admiralty, in cases of tort, does not depend upon the place where the tort complained of was committed, but upon the employment of the vessel concerned. The act of congress of 1845, on this point, requires that the vessel be "employed in the business of commerce and navigation between ports and places in different states and territories, upon the lakes and navigable waters connecting said lakes." The questions to be determined on this motion are: (1) Was the Constitution employed in the manner contemplated by the act of 1845, when the alleged tort occurred? (2) Does the tort "concern" her? The answer proposed to be filed does not deny either of these questions; but seeks to set up, by way of plea, the simple alleged fact that the place where the tort was committed was within the body of a county within the British dominions. Jurisdiction in our courts extends to everything which the authority establishing the courts enacts. It might have made the place where a contract was made, or tort committed, the test of jurisdiction; but it has not done so. It is not torts committed in such and such places, or in a particular manner, which this court is limited to adjudicating; but torts concerning such and such vessels, while engaged in a particular employment. It is asserted by the respondent, as a fact, that the collision occurred within the limits of a British county, and therefore this court is ousted of jurisdiction. Will not this fact, if available for this purpose, be also available to defeat the jurisdiction of this court in every case where the Welland canal must be employed? This canal is indispensable for the commerce between Lakes Erie and Ontario. If the canal is "navigable water" within the meaning of the act of congress, as regards contracts relating to that commerce, there exists no reason why it should not be so considered as regards torts. If it is not "navigable water," then the provisions of said act do not apply to commerce and navigation between those two great lakes. It will not be insisted that the cause of action in this case is in the nature of an intransitory action, which cannot be brought in a jurisdiction foreign to that wherein the cause of action arose. This is sufficiently met by the case of Smith v. Cowdry, 1 How. [42 U. S.] 28. The ground must be, if sustained at all, that the cause of action having occurred "within the body of the county," it is not merely without the jurisdiction of this court, but also without the jurisdiction of any admiralty court; and this proposition is fully met by the case of Waring v. Clark, 5 How. [46 U. S.] 441. This case disposes of the infra corpus comitatus restriction upon the jurisdiction of the admiralty courts; and the "ebb and flow of the tide" restriction was also swept away in the case of The Genesee Chief, 12 How. [53 U. S.] 449; Ben. Adm. § 312.

WILKINS, District Judge. The question presented in this case, is one of jurisdiction, and arises on a motion made to set aside a default regularly obtained three months before, and for leave now to file an answer. The libel was brought to recover damages, which resulted from a collision between the Young America, and the schooner Constitution, of which the libelant was the proprietor. It states, "that the schooner started from the port of Erie, in the state of Pennsylvania, on the 20th of August last, with a cargo of coal bound for Toronto on Lake Ontario; and that while she was lying windbound on the heel path side of the Welland canal, and against its bank, she was carelessly run into by the propeller," and greatly damaged. The proposed answer shows, that the "alleged collision occurred within the Welland canal," an artificial water communication, connecting Lakes Erie and Ontario, "and that the said canal is situated wholly within one of the counties of the province of Canada West," a jurisdiction foreign to that of the United States.

This court derives its jurisdiction from the constitution of the United States, and the acts of congress made in pursuance thereof. The second section of article 3 of the constitution of the United States, in defining the judicial power of the courts of the United States, declares that it "shall extend to all cases of admiralty and maritime jurisdiction:" which manifestly embraces those subjects; whether of contract or tort, which were then, under the general maritime law, the appropriate subjects of the jurisdiction of courts of admiralty. There were cases upon, and contracts pertaining to the navigation of the high.

seas, in contradistinction to contracts made, or to be executed on land, or to torts of the same character as to locality, comprehending navigable rivers in which the tide ebbed and flowed. The act of congress of the 26th of February, 1845, did not, as has been held by the supreme court in the case of The Genesee Chief [supra] enlarge the jurisdiction of the national courts as to questions of admiralty, but merely conferred a new jurisdiction on the district court. It declares that these courts shall "have the same jurisdiction in matters of contract and tort, arising in or upon vessels of certain character, which at the time were employed in business of commerce and navigation between ports and places in different states and territories, as was then exercised by the district courts as to vessels employed in navigation and commerce on the high seas."

It is contended by the respondent, that the tort complained of was not committed on any waters naturally connecting Lakes Erie and Ontario, but on an artificial communication, and without the jurisdiction of the United States. The force of this objection rests upon the construction of the declaratory words of the statute. Jurisdiction is given over contracts and torts pertaining to vessels navigating between "different ports in different states and territories, upon the lakes and the navigable waters connecting said lakes." A natural stream properly signifies a river flowing from its source to the ocean, or an outlet between one interior sea or lake and another, such as the rivers Mississippi, St. Clair and the Detroit. The statutory language is more comprehensive, and when we take into consideration the date of the statute, and the history of the Welland canal, with which great internal improvement and commercial facility we must suppose the legislature to have been acquainted, the phrase "navigable waters" connecting said lakes, cannot otherwise be construed than as embracing the Welland canal. the only "navigable waters" connecting Lakes Erie and Ontario, known at the time the act was passed.

It is conceded in the argument, that at the time the collision occurred, the schooner was engaged in navigating between a port on Lake Erie, and another port on Lake Ontario. These ports were in different states and territories. It is also conceded, that the Welland canal was the only water communication between the lakes. If this canal, then, is held not to be "navigable waters," within the meaning of the act, it would operate to exclude a large portion of the commerce of the lower lakes. Shall there then be no remedy for breach of contracts and torts, arising in the navigation and commerce between these lakes? For many years before the law of 1845 was enacted, a great and growing commerce was carried on between the different states bordering on both of them. In legislating, then, upon the subject, with the view of conferring jurisdiction, was it the intention to exclude this commerce, from the protection afforded by the law, to the commerce of the upper lakes, connected by rivers or natural waters. If such was the intention, wherefore the language employed, navigable waters, and not navigable rivers? But the act does not make the jurisdiction of the court to depend upon the locality or place where the tort was committed. That rests upon the character and the employment of the vessel. And if this vessel was of that character, and was engaged at the time of the collision, in this description of commerce, we think the jurisdiction attaches. The court, therefore, refuses to open the default, and denies the leave to answer.

[The motion was renewed upon affidavits, but was denied. Case No. 12,550.]